UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LISA M. WILLIAMS,

                                Plaintiff,

                                                    **Hon. Hugh B. Scott**

                    v.                              **16CV754V**

                                                    **Report
                                                    and
NANCY A. BERRYHILL[1], Acting               Recommendation**
Commissioner of Social Security,

                                Defendant.


Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 9 (plaintiff), 11 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Lisa Williams" or "plaintiff") filed an application for disability insurance

benefits on November 5, 2010.   That application was denied initially and on reconsideration.

The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de</u>

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to
Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting
Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required,
42 U.S.C. § 405(g).

novo and concluded (following remand from the Appeals Council, R. 23), in a written decision dated January 5, 2015, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 21, 2016, when the Appeals Council denied plaintiff's request for review (R. 1).

Plaintiff commenced this action on September 19, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 9, 11). The motions were deemed submitted on May 4, 2017 (Docket No. 10).

## FACTUAL BACKGROUND[2]

Plaintiff was born on October 21, 1965, and has a limited education. Plaintiff testified that she completed the tenth grade and was in special education (R. 60, 41). The record on her education is sparse. Plaintiff attended Pittsburgh, Pennsylvania, public schools and Peabody High School (R. 41, 60, 590), but academic records from these institutions were sought but not incorporated into this record (R. 342, 409). Consultative Examiner Susan Santarpia, Ph.D., noted that plaintiff had completed the ninth grade and received special education services while in school (R. 570). Plaintiff did not have a GED (R. 49, 65).

Plaintiff also does not have past relevant work (R. 30), testifying that she had not worked since 1997 (R. 61).

Plaintiff has claimed impairments of a learning disorder and depressive disorder (R. 25). She complains that she has problems reading and focusing and does not know how to read or

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 6.

2

write (R. 27, 42-43, 60-61).   For example, plaintiff previously had disability benefits but lost

them in part because she failed to keep track of the paperwork to continue coverage (see R. 42).

## MEDICAL AND VOCATIONAL EVIDENCE

At steps two and three of the five-step analysis (described below), the ALJ found that

plaintiff's mental impairments (singly or in combination) did not meet the Listings 12.04

(affective disorders) and 12.05 (mental retardation or intellectual disorders[2]), 20 C.F.R. Pt. 404,

Subpt. P, App'x 1, §§ 12.04, 12.05 (2014) (hereinafter referenced as "Listing" and section

number) (R. 25).   The ALJ first considered "paragraph B" criteria for Listing 12.04 (which are

the same criteria as "paragraph D" of Listing 12.05).   Those criteria require at least two marked

restrictions in the following categories:   activities of daily living; maintaining social

functioning; maintaining concentration, persistence, or pace; and repeated episodes of

decompensation (R. 25).   As for plaintiff's activities of daily living, the ALJ found that plaintiff

had only mild restriction (R. 26).   As for her maintenance of social functioning, the ALJ found

that plaintiff had mild difficulties (R. 26).   As for plaintiff's maintenance of concentration,

persistence, or pace, the ALJ found that plaintiff had moderate difficulties (R. 26).   The ALJ

then noted that plaintiff had no episodes of decompensation (R. 26).   As a result, the

---

[2]Later renamed "intellectual disability" in an amendment to the regulations but with no
substantive changes intended for the Listing, Hochstine v. Colvin, No. 14CV916, 2016 WL
3251313, at *2 n.2 (W.D.N.Y. June 14, 2016) (Telesca, J.); Myers v. Comm'r, 684 F. App'x
186, 186 n.1 (3d Cir. 2017) (summary Order) (amended 78 Fed. Reg. 46,499, 46,499-501
(Aug. 1, 2013)), and further amended to be labeled "intellectual disorders," 81 Fed. Reg. 66,138,
66,150 (Sept. 26, 2016); Myers, supra, 684 F. App'x at 186 n.1.
   Because the ALJ here decided this matter in 2015, only the relabeling amendment (and
not the procedural changes enacted in 2016) would apply to this action, Swiantek v. Comm'r,
558 F. App'x 82, 84 n.1 (2d Cir. 2015) (summary Order).

"paragraph B" criteria were not met (R. 26); by extension, Listing 12.05 criteria D were not met as well (R. 26).

The ALJ next considered "paragraph C" criteria of Listing 12.04, concluding that the evidence did not establish the presence of those criteria (R. 26), finding that she had no history of repeated episodes of decompensation, a residual disease process or a history of one or more years' inability to function outside of a highly supportive living arrangement (R. 26).

For step four and determination of plaintiff's residual functional capacity, the ALJ reexamined the requirements of Listing 12.05 and plaintiff's condition (R. 26-27). Plaintiff would meet "Paragraph A" criteria for this Listing if she has a dependence upon others for her personal needs (R. 26). The ALJ did not discuss whether plaintiff established this criterion (cf. R. 26-27). As for "paragraph B" criteria, if plaintiff had a valid verbal, performance, or full-scale IQ score of 59 or below, that criteria would be met (R. 27). Here, plaintiff had three IQ tests in this record. The ALJ discounted plaintiff's July 2011 IQ score from Mark Gunther, Ph.D. (R. 416-17), because of plaintiff's alcohol use, with the ALJ speculating that plaintiff was not as abstinent as she claimed when she took that test (R. 27, 28). Dr. Gunther, however, noted plaintiff's statement of her abstinence (R. 416), with Dr. Gunther recommending plaintiff continue her abstinence (R. 417). In March 2012, plaintiff had a psychological assessment conducted by Jill Hamilton, Ph.D., who found that plaintiff had an IQ score of 67 and an Adaptive Behavior Assessment System, Second Edition ("ABAS-II") score of 65 indicating a "very low range of adaptive abilities" (R. 590, 591, 592). Finally, consultative psychologist Dr. Santarpia examined plaintiff on March 2014 and found that she had a full scale IQ score of

70 (R. 572).   The ALJ found that plaintiff's IQ scores did not meet the threshold for "paragraph B" (R. 27).

Under "paragraph C" criteria, a claimant would meet Listing 12.05 if that claimant has an IQ score of 60-70 and a physical or other mental impairment that imposes an additional or significant work-related limitation (R. 27).   The ALJ found that both of these requirements were not met (R. 27).   Here, although plaintiff has IQ scores within the 60-70 range (R. 591, 572), she did not have a physical or mental impairment that imposed an additional and significant limitation of function (R. 27).

Consultative psychologist Renee Baskin, Ph.D., examined plaintiff on March 14, 2011 (R. 391, 28).   She found that plaintiff complained of sleep difficulty, dysphoric moods, crying spells, apprehension, and worry (R. 391-92).   While estimating plaintiff's borderline intellectual functioning (R. 393), she opined plaintiff had no more than a minimal limitation in her ability to follow and understand simple directions, or perform simple tasks independently, and had moderate limitations in her ability to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress (R. 393-94).   The ALJ gave great weight to this opinion because Dr. Baskin had examined the plaintiff and the medical record supports this opinion (R. 28).

For step four, the ALJ also found that plaintiff had a residual functional capacity to perform a full range of work at all exertional levels (R. 27).   That analysis included non-exertional limitations such that plaintiff was able to occasionally interact with the public; occasionally understand, remember, and carry out complex and detailed tasks; capable of

performing simple and unskilled work; and unable to perform work which requires reading to learn job tasks (R. 27). The ALJ noted that plaintiff's daily activities were not limited to the extent expected given her symptoms and complaints (R. 29). The ALJ reached this conclusion based upon plaintiff not having received "the type of medical treatment one would expect for a totally disabled individual," her treatment was "essentially routine and conservative in nature," and that her treating sources did not indicate any restrictions (R. 30). The ALJ also found that plaintiff had no past relevant work.

Factoring in plaintiff's age, education, work experience, and residual functional capacity, at step five the ALJ found that plaintiff's non-exertional limitations compromised her ability to work at all exertional levels (R. 30-31). At the first hearing when posed a hypothetical similar to plaintiff's residual functional capacity, vocational expert Jay Steinbrenner opined that this claimant could work as a dishwasher or kitchen porter and laundry worker (R. 83). Following remand, the ALJ asked vocational expert David Festa, given plaintiff's non-exertional limitations, what jobs in the national economy could a hypothetical claimant with plaintiff's residual functional capacity perform (R. 31, 51-52). Festa testified that, considering all factors, such a hypothetical claimant could perform such jobs as a racker (light exertion) or a lens inserter (sedentary exertion) (R. 31, 52). From this, the ALJ then concluded that plaintiff was not disabled (R. 31).

In denying review, the Appeals Council found that substantial evidence supported the ALJ's rejection of disability under Listing 12.05, although the Appeals Council adopted different grounds (R. 2). The Appeals Council found that Dr. Baskin's opinion (that did not support a finding of disability under Listing 12.05) was consistent with the ALJ's decision (R. 2). The

Appeals Council rejected Dr. Gunther's test results because these results were "not from an acceptable standardized test of intelligence," thus according those results little weight in evaluating plaintiff's cognitive impairment (R. 3).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.   If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).   However, it should be noted that the ALJ has an affirmative duty to develop fully the record.   Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care

must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the ALJ's ignored the "best evidence" and relied upon the ALJ's lay opinion for medical opinion in determining plaintiff's lack of adaptive functioning and appropriate IQ score in finding that she did not meet Listing 12.05 criteria (Docket No. 9, Pl. Memo. at 13-25). Specifically, plaintiff faults the ALJ for not addressing the ABAS-II administered by Dr. Hamilton in March 1, 2012 (R. 592-93; Docket No. 9, Pl. Memo. at 8), in finding that Listing 12.05 was not met (Docket No. 9, Pl. Memo. at 13-14). She claims that the residual functional capacity finding did not address the findings of Dr. Baskin, although the ALJ placed great weight on Dr. Baskin's findings (id. at 25-29).

Defendant Commissioner responds that the ALJ reasonably concluded that plaintiff did not demonstrate deficits in adaptive functioning to show that she met Listing 12.05 criteria (Docket No. 11, Def. Memo. at 20-24). Defendant indicates sections of the record showing plaintiff was not significantly impaired in her ability to perform a wide variety of tasks upholding the ALJ's finding on adaptive functioning (id. at 22). Regarding plaintiff's IQ scoring, defendant asserts that the ALJ properly assessed plaintiff's cognitive functioning (id. at

25-26).   First, plaintiff's IQ scores should be considered moot if plaintiff's failure to demonstrate significant deficits in adaptive functioning is accepted (id. at 25).   Defendant also responds that the ALJ could properly reject an IQ score that is inconsistent with the rest of the record (id. at 26).   Next, defendant argues that the residual functional capacity assessment was supported by substantial evidence, claiming that Dr. Baskin's opinion (given great weight by the ALJ) was consistent with that assessment (id. at 26-30).   Finally, defendant counters that the step five determination was supported by substantial evidence (id. at 30) and remand for calculation of benefits was not warranted here (id.).

In her reply (Docket No. 12, Pl. Reply Memo.), plaintiff argues that the ALJ did not acknowledge or mention Dr. Hamilton's finding as one of plaintiff's treating sources (id. at 1-2), with this failure to consider the medical record being grounds for remand (id. at 2).   Plaintiff noted Dr. Hamilton's findings regarding plaintiff's IQ scores (id. at 1 n.1; R. 590-93) and those of other treating sources in this record (Docket No. 12, Pl. Reply Memo. at 1 n.1; R. 416-17, 570-77).   According to plaintiff, Dr. Hamilton's assessment was "the only assessment of adaptive functioning rendered to the Plaintiff and submitted for the ALJ's consideration" (Docket No. 12, Pl. Reply Memo. at 3).   She believes that the ALJ had an obligation to explain the weight (here none since it apparently was not considered) given to Dr. Hamilton's opinion and that failure is grounds for remand (id.).

*Listing 12.05*

At issue is step three, the determination of whether plaintiff's mental impairments met the criteria for Listings 12.04 or 12.05.   The parties do not address the ALJ's finding that plaintiff failed to establish the criteria for Listing 12.04, for affective disorders.   As noted in discussing

10

step two in the medical evidence, elements of the criteria for this listing overlaps with those of Listing 12.05; this Court thus addresses Listing 12.05.

"In order to be found disabled based on mental retardation under Section 12.05 of the Listing of Impairments, a claimant 'must prove:   (1) that he satisfies the definition provided for in the introductory paragraph of Section 12.05, and (2) that he satisfies the criteria listed in subsection A, B, C, or D,'" <u>Hochstine v. Colvin</u>, No. 14CV916, 2016 WL 3251313, at *2 (W.D.N.Y. June 14, 2016) (Telesca, J.) (quoting <u>Antonetti v. Barnhart</u>, 399 F. Supp.2d 199, 200 (W.D.N.Y. 2005) (Larimer, J.)); <u>see also</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A).

I.      Introductory Paragraph Requirements

Plaintiff argues that the ALJ did not consider the findings of Dr. Hamilton and her finding that plaintiff had very low range adaptive functioning (Docket No. 9, Pl. Memo. at 13-16, 19).   Defendant dismisses standardized test results that Dr. Hamilton found as being merely one part of an overall assessment (Docket No. 11, Def. Memo. at 23), <u>see</u> 20 C.F.R. Part 404, Subpt. P, App'x 1, §§ 12.00A, 12.05(D)(6)(a).   The parties dispute whether the facts are similar to those in <u>Talavara v. Astrue</u>, 697 F.2d 145 (2d Cir. 2012), with plaintiff distinguishing herself from that claimant (Docket No. 9, Pl. Memo. at 16) and defendant asserting that plaintiff's capabilities are similar to <u>Talavara</u> (Docket No. 11, Def. Memo. at 24).

There is nothing in the ALJ's decision showing that he considered Dr. Hamilton's findings or weighed them with the indications of plaintiff's ability to perform a variety of daily tasks.   There is no comparison, for example, of Dr. Hamilton's findings with those of consultative examiner Dr. Santarpia (<u>cf. id.</u> at 21-22; R. 564, 573).   This record contains disputes whether plaintiff could manage her finances (<u>compare</u> Docket No. 9, Pl. Memo. at 16

11

with Docket No. 11, Def. Memo. at 24 and Administrative Record citations therein), and fiscal management is one aspect of adaptive functioning, Listing 12.00C(D). The absence of the ALJ even commenting on Dr. Hamilton's assessment is telling. A reasonable factfinder would not render its conclusions on this record by disregarding one portion of plaintiff's treating record without explanation, cf. Brault v. Social Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012) (Docket No. 11, Def. Memo. at 24). This is sufficient basis **for remand** to obtain the ALJ's assessment of plaintiff's adaptive functioning.

That introductory paragraph also states that the evidence must show manifestation of that impairment "before age 22," see 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05. The Second Circuit has held that in "absence of evidence indicating otherwise, that claimant's will experience a 'fairly constant IQ throughout [their lives],'" Talavera v. Astrue, 697 F.3d 145, 152 (2d Cir. 2012). The court concluded that "Talavera's evidence of a qualifying IQ score as an adult suffices to meet her prima facie burden," id.

Here, plaintiff in her application claimed that her condition began on June 4, 1984, when she was just over eighteen years old (R. 59, 264, 244). Dr. Gunther in his July 19, 2011, evaluation (when plaintiff was 45 years old) also indicated that her symptoms existed prior to age 22 (R. 416, 417). In her application, however, plaintiff claimed that she was not disabled prior to age 22 (R. 244). This may affect acceptance of her 2011 IQ score and whether that score will be imputed to her condition up to age 22. This can be considered on remand by the ALJ.

II.     Subsection Criteria

A.     Criteria A

The ALJ did not address these criteria, which requires a showing of dependence in meeting daily needs.   Both parties have not addressed this criterion and thus plaintiff is deemed not to contend that she met this criterion.

B.     Criteria B

For Criteria B, plaintiff would be deemed disabled if she had an IQ score at 59 or lower, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.05(B).   As discussed above, only plaintiff's testing in 2011 had a score of 59.   The Commissioner has two objections to this score.   First, the ALJ found that the score might have been affected by plaintiff's use of alcohol (despite claiming abstinence, as believed by Dr. Gunther who administered the IQ test) (R. 28).   Second, the Appeals Council alternatively found that the test plaintiff took (the Webster Abbreviated Scale of Intelligence or "WASI") was not an acceptable standardized test and the results were an outlier from her subsequent scores (R. 2).

As for plaintiff's possible use of alcohol during testing in 2011, the ALJ found that alcohol affected her testing without stating a basis in the record for finding that she was drinking. Dr. Gunther discounted any effect of alcohol on plaintiff's test results (R. 416-17) but the ALJ does not show why this finding is inappropriate or should be discussed.   IQ scores are essentially static and do not change by the claimant's alcohol use during testing, Vasquez-Ortiz v. Apfel, 48 F. Supp.2d 250, 257 (W.D.N.Y. 1999) (Heckman, Mag. J.) (Docket No. 9, Pl. Memo. at 22).   As in Vasquez-Ortiz, the argument advanced by defendant here that plaintiff's alcohol use affected her testing is speculative, id.   Plaintiff's subsequent testing in 2012, and

plaintiff was in an alcohol program sometime in 2012, was not stated by Dr. Hamilton when she

tested plaintiff, or whether she had a drug or alcohol history (R. 590-92); plaintiff had an IQ

score on 67.   In 2014, Dr. Santarpia tested plaintiff, noting her drinking alcohol in a "socially-

acceptable manner" after being in an alcohol program in 2012 (R. 571); plaintiff tested with an

IQ score of 70 (R. 572).   Plaintiff appears to have been drinking at some level during the period

of IQ testing from 2011-14; thus, the ALJ's discounting the first IQ test result in 2011 lacks any

basis.

As for the WASI as the acceptable test, the Commissioner has accepted WASI scores in

other cases, <u>Pritchard v. Colvin</u>, No. 13CV945, 2014 WL 3534987, at *6 (N.D.N.Y. July 17,

2014); <u>Fuimo v. Colvin</u>, 948 F. Supp.2d 260, 267-68 (N.D.N.Y. 2013) (Docket No. 9, Pl. Memo.

at 23), despite the Appeals Council's contrary conclusion in this case (R. 2).   While the Appeals

Council here rejected the WASI as an acceptable testing method, the ALJ has not yet evaluated

the validity of that test.   The record fails to show how the Appeals Council could reject the

WASI test (<u>cf.</u> R. 2).   On remand, the ALJ could assess the validity of WASI scores with

plaintiff's WAIS-IV scores.

Therefore, plaintiff's motion for judgment on this ground (Docket No. 9) should be

**granted** and the matter remanded to reexamine plaintiff's 2011 IQ score.   For a complete

record, this Court next considers the remaining, alternative criteria.

C.    Criteria C

Under this criteria, the claimant prevails if she has (a) an IQ score of up to 70 **<u>and</u>** (b) a

mental or physical impairment, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.05(C).   No one

claims that plaintiff has a physical impairment.

While plaintiff has acceptable scores between 67 and 70 (R. 591, 572), the present issue is whether plaintiff has a mental impairment that meets this part of the Listing. Plaintiff points to Dr. Hamilton's finding that plaintiff had very low range of adaptive abilities (R. 590-92; Docket No. 9, Pl. Memo. at 14-19) and concludes that the ALJ failed to review or weigh Dr. Hamilton's findings (Docket No. 12, Pl. Reply Memo. at 1). Defendant responds that plaintiff's ability to perform everyday activities belies testing showing that she might have issues with adaptive functioning (Docket No. 11, Def. Memo. at 23, 24). Defendant concludes that plaintiff merely disagrees with the ALJ's weighing of evidence in reaching her contrary conclusions (id. at 24).

Defendant points out the daily activities plaintiff can perform. Although she cannot read or write, plaintiff lives alone (or with her son) (R. 46, 393, 590, 564). Defendant argues that the inability plaintiff had to manage her funds was due to her alcohol abuse and not due to her claimed disability. Furthermore, at least one examiner found that plaintiff could manager her finances and used public transportation. (Docket No. 11, Def. Memo. at 24; R. 394, 565, 391, 583.)

The ALJ, however, should note Dr. Hamilton's findings in addition to plaintiff's everyday activities in determining whether plaintiff meets this Listing. As discussed above for the Listing 12.05 introductory paragraph requirements, the ALJ needs to address Dr. Hamilton's findings as to adaptive functionality. The ALJ found that that plaintiff was able to perform personal hygiene, clean, do laundry, and cook (R. 29, 572), but examiners reported differently whether plaintiff could in fact manage her money (compare R. 394 (plaintiff cannot manage her money) with R. 572, 564-65 (can manage her money)) or use public transportation (compare

R. 583 (avoids public transportation) with R. 391 (plaintiff took bus to evaluation in March 2011)).   As compiled by the ALJ, plaintiff's activities of everyday life are inconclusive. Assessment of Dr. Hamilton's findings may assist in establishing whether plaintiff meets Criteria C.

As a result, plaintiff's motion on this ground should be **granted** and the matter remanded on this criteria as well.

D.      Criteria D

This criteria requires both the requisite IQ score (of 60-70) and two marked restrictions in activities of daily living, maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 12.05(D).   Again, plaintiff does have IQ scores within the 60-70 range.

The ALJ claimed to place great weight on the findings of Dr. Renee Baskin (R. 28-29), but plaintiff argues that the ALJ disregarded Dr. Baskin's findings that plaintiff had moderate limitations in attention, concentration, persistence, and pace (Docket No. 9, Pl. Memo. at 25-29; R. 393-94, 28).   Dr. Baskin noted that plaintiff was able to do all activities of daily living by herself (R. 393).   The ALJ discussed Dr. Baskin's findings.

> In March 2011, Dr. Renee Baskin, consultative psychologist, examined the claimant ([R. 391]).   The claimant complained of sleep difficulty, dysphoric moods, crying spells, apprehension, and worry (Id. at [R. 391-92]).   She found the claimant to have some short-term memory deficits and concentration difficulties (Id. at [R. 392]).   Dr. Baskin also noted borderline intellectual functioning (Id. at [R.393]).   She opined that the claimant has no more than a minimal limitation in her ability to follow and understand simple directions and instructions, or perform simple tasks independently; and moderate limitations in her ability to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate

16

adequately with others, and appropriately deal with stress (Id. at [R. 393-94]). Great weight is given to Dr. Baskin's opinion because she examined the claimant and her opinion is supported by clinical findings made during the examination.

(R. 28.)

Plaintiff argues that the residual functional capacity did not consider Dr. Baskin's findings as to plaintiff's moderate limitations (Docket No. 9, Pl. Memo. at 25; R. 28, 393-94). In particular, plaintiff points to her post-traumatic stress disorder, OCD, anxiety, and panic disorder which the ALJ did not note although adopting Dr. Baskin's findings (Docket No. 9, Pl. Memo. at 26; R. 391-92 (Dr. Baskin), 580-85 (Lydia Moore, LMSW, noting panic disorder), 553-55 (Diane Page, NPP), 549-51 (Moore medical statement concerning depression with anxiety, OCD, PTSD, or panic disorder), 769 (employability assessment form). Dr. Baskin, however, diagnosed plaintiff as having alcohol dependence/abuse and dysthymic disorder (R. 394). Lydia Moore also noted that plaintiff had learned how to manage her panic (R. 580) while not reporting on the depression in the medical statement that plaintiff had generalized persistent anxiety, recurrent severe panic attacks, recurrent obsessions or compulsions (R. 549). The employability assessment of May 15, 2015, noted that plaintiff suffered from PTSD, depressive disorder, and mild mental retardation (R. 769).

Again, the ALJ found that plaintiff had

"the residual functional capacity to perform the full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to occasionally interact with the public; and occasionally understand, remember, and carry out complex and detailed tasks. [She] [sic] is capable of performing simple and unskilled work. The claimant is unable to perform work, which requires reading to learn the jobs tasks"

(R. 27).

Plaintiff's disability contention turns on what is meant by "moderate" under Listing 12.05. When rating degrees of limitation for activities of daily living or concentration, persistence, or pace, the Commissioner uses a five-point scale, ranging from none, mild, moderate, marked, to extreme, 20 C.F.R. § 1520a(c)(4). A rating from none to mild is not deemed severe, id. § 1520a(d)(1). Cases have held that claimants who have moderate limitation in concentration, persistence, or pace may also be able to follow directions, perform simple and some complex tasks, McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014); Frost v. Colvin, No. 14CV965, 2017 WL 2618099, at *2 (W.D.N.Y. June 16, 2017) (Telesca, J.). But "marked" regarding concentration, persistence, or pace is defined by "the nature and overall degree of interference with function," with an example being a claimant able to complete simple tasks but requiring extra supervision or assistance to do so or performing without an unreasonable number of rest periods or undue interruptions or distractions, 20 C.F.R. Part 404, Subpt. P, App'x 1, Listing 12.00C(3). As another court noted, "A marked limited signifies a limitation which is 'more than moderate but less than extreme . . . aris[ing] when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis,'" Farina v. Colvin, No. 13CV1246, 2014 U.S. Dist. LEXIS 180464, at *21 (N.D.N.Y. Sept. 3, 2014) (Hummel, Mag. J.).

In this case, there was no finding of marked restrictions. Dr. Baskin did not find any marked limitation, instead finding that plaintiff only had moderate limitations. The ALJ did incorporate Dr. Baskin's findings as non-exertional limitations in plaintiff's residual functional capacity (R. 28, 394; see R. 27). The same mixed bag of activities of daily life noted above that

plaintiff could or could not perform, do not indicate that she has a marked restriction in her daily living, maintaining concentration, persistence or pace. As to her maintenance of social functioning, Dr. Baskin found that plaintiff's "socialization revolve[d] around a few friends and group therapy. Other than that, she is at home watching TV" (R. 393). Plaintiff does not address this area. The Category requires <u>two marked</u> restrictions; plaintiff has not shown that she suffers from two or more marked restrictions. Thus, under Category D, there is no limitation. On this category, plaintiff's motion (Docket No. 9) for judgment on this particular ground should be **denied**.

        E.        In Summary

This matter should be remanded for the ALJ to reexamine the introductory paragraph and Criteria B and C of Listing 12.05. Specifically, the ALJ needs to determine whether Dr. Gunther's 2011 IQ scores determine if plaintiff meets Listing 12.05 Criteria B, as well as whether plaintiff meets Listing 12.05 Criteria C by expressly considering the findings of Dr. Hamilton as well as plaintiff's ability to perform everyday activities.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 11) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 9) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material, which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the

basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

_/Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 5, 2017